IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONA LISA HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 06-201-GMS |
| ) | |
| CPL. COVERALE and WCI SUPERVISOR ) | |
| GEORGE O'CONNOR, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

**I. INTRODUCTION**

The plaintiff Mona Lisa Harrison ("Harrison"), a prisoner incarcerated at the Delores J. Baylor Women's Correctional Institute ("BWCI"), Smyrna, Delaware, filed this lawsuit on March 20, 2006, pursuant to 42 U.S.C. § 1983. She appears *pro se* and proceeds *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 8.) The case proceeds on two claims, one against each defendant, as set forth in the complaint and the amended complaint. (D.I. 1, 16.) Harrison has filed a request for counsel and the defendants' move for summary judgment. (D.I. 57, 62.) For the reasons that follow, the court will grant the defendants' motion for summary judgment and will deny as moot the request for counsel.

**II. BACKGROUND**

Harrison alleges that on February 20, 2006, she was subjected to an illegal search by the defendant Cpl. Coverdale ("Coverdale").[1] The incident occurred when Harrison, along with

---

[1]Coverdale is now known as Sandy Dale.

other inmates, was picking up trash on the highway, and Coverdale observed some inmates exchange something. (D.I. 1, 16, 58.) Harrison alleges that while on the highway, in front of houses, and with traffic coming and going, Coverdale required her to pull down her pants and raise up her shirt, exposing herself to the public. Harrison next alleges that on March 20, 2006, law librarian George O'Connor denied her access to the law library despite a looming appellate case which resulted in her "losing her case in court."[2] (D.I. 1, 16, 58.)

Harrison provided the court a copy of a grievance dated February 20, 2006 regarding the search by Coverdale. The search occurred during the week of October 16-20, 2005.[3] (D.I. 1.) According to Claudette Cain ("Cain"), a correctional records clerk, DOC records do not indicate that Harrison ever submitted the grievance. (D.I. 63, ex. B.) The grievance does not contain a receipt date nor is there a grievance in Harrison's institutional file, dated February 20, 2006, with the same subject matter as in the grievance Harrison provided. (*Id.*) Cain states that had Harrison gone through the appropriate channels, a copy of the grievance would be in her institutional file. Finally, Cain states that the grievance was not timely submitted because grievance procedure requires a grievant to complete the grievance form within seven calendar

---

[2]In 1988, Harrison was sentenced to life in prison, subject to parole, following a guilty plea to felony murder in the second degree. Harrison was originally paroled in January 1996 and, since then, has been in and out of prison, having obtained various sets of new charges and parole violations over the years. *State v. Harrison*, 2009 WL 17443910 (Del. Super. Ct. June 19, 2009). On February 6, 2006, the Superior Court of the State of Delaware, in and for Sussex County summarily denied Harrison's first motion for postconviction relief as time-barred and as substantively without merit. On July 6, 2006, the Delaware Supreme Court affirmed the judgment of the Superior Court. *Harrison v. State*, No. 107, 2006 (Del. July 6, 2006). Harrison's second motion for postconviction relief filed on March 11, 2009 was denied on June 19, 2009. *State v. Harrison*, 2009 WL 17443910.

[3]The grievance does not contain a date for the October occurrence, but presumably it occurred in 2005 since the grievance was submitted in February 2006.

days following the incident, and Harrison's grievance is dated some four months following the incident of which she complains. (*Id.*)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by

---

[4]Rule 56 was revised by amendment effective December 1, 2010. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c) (1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

On May 7, 2012, the court granted Harrison's motion for an extension of time to file a response to the motion for summary judgment. (D.I. 65.) Harrison was given thirty days from the date of the order to file her response. She was advised that if no response was filed, the court would rule on the papers submitted to the court. Harrison filed no opposition to the motion for summary judgment However, the Court will not grant the entry of summary judgment without considering the merits of the defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

## IV. DISCUSSION

### A. Administrative Remedies

The defendants contend that Harrison failed to exhaust her administrative remedies with regard to the alleged unconstitutional search by Coverdale. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The defendants have the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002). Defendants may also raise this defense via a motion to dismiss in appropriate cases. *Id.* at 295 n.8.

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

"'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v.*

*Gillis,* 372 F.3d 218, 231 (3d Cir. 2004)). A prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. *Nickens v. Department of Corr.,* 277 F. App'x 148, 152 (3d Cir. 2008) (not published) (citing *Williams,* 482 F.3d at 639; *Spruill,* 372 F.3d at 228, 231). Perfect overlap between the grievance and a complaint is not required by the PLRA as long as there is a shared factual basis between the two. *Jackson v. Ivans,* 244 F. App'x 508, 513 (3d Cir. 2007) (not published) (citing *Woodford,* 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.").

A futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts,* 251 F. App'x 774, 776 (3d Cir. 2007) (not published) (citing *Nyhuis v. Reno,* 204 F.3d 65, 71 (3d Cir. 2000). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. *See Spruill,* 372 F.3d at 227-28; *Nyhuis,* 204 F.3d at 67. A grievance procedure is not available, even if one exists on paper, if the defendant prison officials somehow prevent a prisoner from using it. *Mitchell v. Horn,* 318 F.3d 523 (3d Cir. 2003). If prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. *Brown v. Croak,* 312 F.3d 109, 112-13 (3d Cir. 2002).

State defendants contend that Harrison did not follow the state prisoner grievance procedure required to resolve the search issue. The record reflects, and it is undisputed, that Harrison did not use the proper channels in submitting her grievance. Nor is it disputed that Harrison failed to submit her grievance in a timely manner. Based upon a review of the record, the court finds that Harrison failed to properly exhaust her administrative remedies with regard to

the alleged unconstitutional search. Accordingly, the court will grant State defendants' motion for summary judgment.[5]

### B. Access to the Courts

The defendants move for summary judgment on the grounds that Harrison has failed to set forth any actions taken by O'Conner that caused actual injury as is required in an access to the courts claim. The defendants argue that Harrison does not allege that the failure to provide legal assistance or notarize a document caused dismissal of her cause or otherwise materially prejudiced her efforts.

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted). A violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access.

The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). "Actual injury" includes the loss of a non-frivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or

---

[5]Inasmuch as Harrison failed to exhaust her administrative remedies as to the unlawful search claim, the court will not address the other issues raised in the defendants' motion seeking summary judgment under different theories.

relates to a challenge to the conditions of confinement. *Lewis*, 518 U.S. at 351-54. In order to demonstrate a claim that inadequate legal materials or assistance resulted in denial of access to the courts, Harrison must show that the inadequacy hindered her ability to pursue a legal claim. *See Lewis*, 518 U.S. at 351. In addition, with respect to the provision of legal assistance to inmates, prison officials are not constitutionally required to provide both legal assistance and a law library. *Bounds*, 430 U.S. at 832. Where prison officials give inmates proper access to a law library, the officials' provision of a single paralegal to assist those inmates is sufficient to defeat a claim of denial of access to the courts. *See Stevenson v. Palakovich*, 2005 WL 1330335 (E.D. Pa. June 2, 2005); *Ashley v. Dudlek*, 1995 WL 562292, at *6-7 (D.Del. Aug. 25, 1995).

Harrison alleges in her amended complaint that, during the time in question, she was working on an appeal before the Delaware Supreme Court with regard to her sentence. Harrison made a request for O'Connor to call her to the law library to find case law and to have a document notarized. She alleges that there was more than enough time for O'Connor to call her, but he did not. Harrison alleges that she was not afforded legal assistance when she needed it and that O'Connor was unable to help in any way. (D.I. 16.) Her grievances indicate that: (1) on February 9, 2006, she unsuccessfully attempted to look up an old case; (2) on February 20, 2006, she was not allowed to have copies made of the research she conducted and case law she needed had been thrown away; and (3) on March 20, 2006 she sent a letter to the law library explaining that she needed to finish an appeal and have something notarized. Harrison received assistance from the Deputy Warden's secretary to complete her appeal. (*Id.* at exs.)

The court takes judicial notice that Harrison was able to timely file her notice of appeal to the Delaware Supreme Court. Thereafter, the Delaware Supreme Court addressed the merits of

her appeal, finding that the postconviction motion was properly dismissed by the lower court as time-barred, having been filed some seventeen years after Harrison's guilty plea and sentence. *See Harrison v. State*, No. 107, 2006 (Del. July 6, 2006). In addition, as evidenced by her grievances, Harrison was provided access to the law library.

After reviewing the record, the court concludes that no actual injury occurred and that no reasonable jury could find in favor of Harrison with regard to the access to the courts claim. Therefore, the court will grant the defendants' motion for summary judgment as to this issue.

## V. CONCLUSION

For the above reasons, the court will deny as moot Harrison's request for counsel and will grant the defendants' motion for summary judgment. (D.I. 57, 62.)

An appropriate order will be issued.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

___July 11___, 2012
Wilmington, Delaware